UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHANIE DAUENHAUER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 2:13-CV-5007-JPH<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 18.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Stephanie Dauenhauer (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on August 21, 2009. (Tr. 140, 144, 156.) Plaintiff initially alleged an onset date of July 1, 2003, but amended the alleged onset date to December 31, 2008 at the hearing. (Tr. 37-38, 140, 144.) Benefits were denied initially and on reconsideration. (Tr. 77, 80, 86, 89, 91, 95.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Marie Palachuk on April 18, 2011. (Tr. 36-72.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 46-64, 66-67.) Medical expert Margaret Moore, Ph.D. and vocational expert Jinnie Lawson[1] also testified. (Tr. 40-45, 64-72.) The ALJ denied benefits (Tr. 13-22) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

---

[1] Ms. Lawson was misidentified as "Cindy Lawson" in the hearing transcript. (Tr. 35-36, 64, 134.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 31 years old at the time of the hearing. (Tr. 46) She graduated from high school and earned college credit in the Running Start program. (Tr. 65-66.) She attended community college for less than a year after high school. (Tr. 66.) Plaintiff has work experience as a makeup artist, dental assistant, activities director, office manager, receptionist, and jewelry salesperson. (Tr. 65.) She testified that in 2004 she was held in a basement by a former fiancé for two days after she broke up with him. (Tr. 48, 174.) He threatened her life but eventually released her. (Tr. 48-49.) Shortly after, he committed suicide while on the phone with her. (Tr. 49.) She does not remember anything about the two weeks after these events. (Tr. 57.) She testified she is in a constant state of stress and she is not the same person she used to be since her former fiancé died. (Tr. 52.) She spends most of her time at home because she gets anxious about leaving. (Tr. 45.) Plaintiff testified she has a boyfriend but the relationship is "limited" because she is not able to be "normal." (Tr. 50.) She testified she used to be different in her relationships, "better, more normal, I think." (Tr. 50.) She has nightmares and she cannot sleep for more than two hours at a time. (Tr. 52.) She takes medication for anxiety and to help her sleep. (Tr. 50-51.) She used to stay home for long periods of time more before she got medication. (Tr. 53.) She is constantly on edge. (Tr. 56.) She has panic attacks. (Tr. 57-58.) She has rituals when she is getting ready and sometimes it takes her all day to get ready to go somewhere. (Tr. 60-61.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a

preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since December 31, 2008, the amended alleged onset date. (Tr. 15.) At step two, the ALJ found plaintiff has the following severe impairments: anxiety disorder not otherwise specified and a personality disorder. (Tr. 15.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 16.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to understand, remember, and carry out simple, routine, and detailed tasks, able to maintain concentration and persistence for at least the 2-hour intervals generally required between regularly scheduled breaks, and can have occasional, superficial (i.e. non-collaborative) contact with the public and co-workers.

(Tr. 17). At step four, the ALJ found plaintiff is unable to perform past relevant work. (Tr. 21.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 21.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from December 31, 2008, through the date of the decision. (Tr. 22.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred: (1) by failing to find PTSD and OCD to be severe impairments at step two; (2) in assessing the medical and psychological opinion evidence; (3) by making a negative credibility finding; and (4) by rejecting lay witness statements. (ECF No. 17 at 14-23.) Defendant argues: (1) the ALJ's step two finding was properly supported; (2) the ALJ properly evaluated the medical and psychological opinion evidence; (3) the ALJ did not err in evaluating plaintiff's credibility; (4) the ALJ properly rejected lay witness statements; and (5) the step five finding is supported by substantial evidence and free of legal error. (ECF No. 18 at 5-20.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ erred in rejecting plaintiff's credibility. (ECF No. 17 at 18-22.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found plaintiff's reported symptoms not credible to the extent they are inconsistent with the RFC finding. (Tr. 18.) The ALJ cited four reasons for rejecting plaintiff's

credibility: (1) inconsistencies between plaintiff's complaints and presentation; (2) plaintiff's failure to obtain treatment in a timely manner; (3) the effectiveness of treatment; and (4) plaintiff's daily functioning and activities. (Tr. 18-19.) The court reviews these reasons to determine whether they are clear and convincing and supported by substantial evidence.

The ALJ's first reason for rejecting plaintiff's testimony is that her presentation on exam and during the course of treatment is inconsistent with the degree of severity of the alleged symptoms. (Tr. 18.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ pointed out an examining psychologist described plaintiff as "provocatively dressed" with "dramatic makeup," which Dr. Moore testified "does not necessarily jive with my understanding of suffering from the level of trauma she claims to be." (Tr. 18, 42, 223, 232.) Dr. Gonzalez, a medical doctor, contrasted plaintiff's statements that she is not doing okay and needs treatment with her ability to "put on makeup and carry herself well on [the] seductive side." (Tr. 18, 232.) Notwithstanding, Dr. Gonzalez referred plaintiff for mental health treatment. (Tr. 232.) The ALJ also pointed out throughout the record plaintiff was reported to demonstrate good eye contact, normal speech, organized thought process, and to have a pleasant and engaging demeanor. (Tr. 18, 236, 300.) The ALJ observed plaintiff was noted to be comfortable during interviews and showed no signs of trouble concentrating or persisting. (Tr. 18, 236, 300.) Plaintiff also told one provider that she is "good with people" and enjoys entertaining people, although the ALJ failed to note plaintiff also reported when she becomes anxious or panicky she walks away from the situation without explaining herself. (Tr. 18, 247.) However, it is noted that the providers cited by the ALJ did not comment that plaintiff's presentation and complaints were incongruous and in fact treated and diagnosed plaintiff despite these observations. While inconsistencies in behavior and appearance may reasonably suggest a lack of credibility, the instances cited by the ALJ in this case are not compelling and, without more, do not themselves justify a negative credibility finding.

The second reason mentioned by the ALJ in making the negative credibility finding plaintiff's long delay in obtaining treatment. The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As the ALJ pointed out, despite allegations that her disabling symptoms dated back a number of years, plaintiff did not initiate mental health treatment until 2009. (Tr. 18.) However,

although plaintiff did not promptly seek psychiatric treatment for her mental health concerns, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Indeed, plaintiff's complaints involve difficulty navigating ordinary daily life outside her home, presumably including making and attending mental health appointments over the years. (E.g., Tr. 170-71.) It was not reasonable for the ALJ in this case to construe plaintiff's delay in starting mental health treatment as evidence of a lack of credibility. Thus, this is not a clear and convincing reason justifying the negative credibility finding.

The third reason cited by the ALJ as justification for the negative credibility determination is when plaintiff complied with treatment, mental symptoms improved significantly. (Tr. 18.) An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ first pointed out plaintiff did not consistently comply with prescribed treatment. (Tr. 18, 302.) Notwithstanding, in 2009, plaintiff reported she had improved sleep and mood with medication. (Tr. 19, 236.) In 2010, plaintiff reported her mood improved after being back on medication. She continued to have panic attacks, but less severe and more manageable. She had been able to attend more outings and social events. (Tr. 19, 300.) The ALJ found this evidence strongly suggests plaintiff's mental health symptoms worsen secondary to lack of or noncompliance with treatment, not in spite of treatment. (Tr. 19.) However, the ALJ failed to note the "significant improvement" in sleep reported was to four hours per night, not a full night's sleep. (Tr. 236.) Plaintiff stated she believed she was doing "much better" with medication in November 2010 as indicated by the ALJ, but the only record after that date reflects complaints of an increase in anxiety and continued nightmares in January 2011. (Tr. 300, 348.) The ALJ's inference that these records reflect plaintiff's complaints are "effectively controlled" with medication is not supported by substantial evidence. As a result, this reason for rejecting plaintiff's testimony is not supported by the evidence.

Lastly, the ALJ found plaintiff's daily functioning and other reported activities are inconsistent with the degree of severity alleged. (Tr. 19.) Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If a claimant is able to spend a substantial part of the day engaged in pursuits

involving the performance of functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling symptoms. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)*; Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ points out plaintiff has been able to attend to personal care and prepare meals. (Tr. 19, 169-47.) She also reported she keeps herself busy by helping out at her father's construction business and enjoys walking her dogs, cooking, painting and writing. (Tr. 19, 167-74, 247.) The ALJ's interpretation of this evidence overlooks the nature of plaintiff's complaints: that she is unable to regularly and consistently navigate the world outside her father's home. All of the activities listed by the ALJ are activities which can be done at or near home with the exception helping at her father's construction business. There is no evidence in the record about the activities performed, frequency, or duration of her help at her father's construction business. To the contrary, plaintiff said it was an activity she could do because "if she is having a bad day she is not obligated to go in" (Tr. 247) which is not consistent with competitive work. It is well-established that a claimant need not vegetate in a dark room in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The daily activities cited by the ALJ are not reasonably inconsistent with plaintiff's complaints and are therefore not substantial evidence supporting a clear and convincing reason for rejecting her testimony.

The ALJ did not provide clear and convincing reasons supported by substantial evidence which justify the negative credibility finding. As a result, the ALJ erred.

**2.      Psychological Opinion Evidence**

Plaintiff argues the ALJ improperly relied solely on the opinion of nonexamining medical advisors to reject every medical provider who examined plaintiff. (ECF No. 17 at 17-23.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support

for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

The written medical source opinions in this case include a July 2009 psychological evaluation by Dr. Moon, an examining psychologist (Tr. 217-20); a 2010 mental residual functional capacity assessments by non-examining psychologists Dr. Underwood (Tr. 249-51) and Dr. Gardner (Tr. 285-87); a June 2010 psychological/psychiatric evaluation by Carole Siefken ARNP (Tr. 289-94); and a January 2011 mental residual functional capacity assessment by Dr. Saleh. (Tr. 324-26.) The ALJ rejected the opinions of Dr. Moon, Ms. Siefken, and Dr. Saleh and credited the opinion of Dr. Gardner.[2] (Tr. 19-20.) The ALJ also credited the testimony of the reviewing medical expert, Dr. Moore. (Tr. 15-16.) Plaintiff argues the ALJ improperly relied solely on the opinion of nonexamining medical advisors to reject every medical provider who examined plaintiff. (ECF No. 17 at 17.) Defendant argues the ALJ adequately summarized conflicting opinion evidence, interpreted it, and gave reasons for the decision. (ECF No. 18 at 10.)

   a. **Dr. Moon**

Dr. Moon completed a Psychological Evaluation form on July 21, 2009. (Tr. 217-20.) He diagnosed obsessive compulsive disorder, panic disorder with agoraphobia, and obsessive-

---

[22] The ALJ did not mention or assign weight to Dr. Underwood's opinion. Dr. Underwood's findings do not differ significantly from Dr. Gardner's conclusions.

compulsive personality disorder and assessed a GAF of 50. (Tr. 218.) Dr. Moon assessed moderate limitations for two cognitive factors and four social factors[3]. (Tr. 219.) The ALJ rejected Dr. Moon's opinion for three reasons. (Tr. 20.)

The first reason cited by the ALJ in discounting Dr. Moon's conclusions is Dr. Moon relied heavily on plaintiff's unreliable self-report. (Tr. 20.) In some cases, this may be a specific, legitimate reason for rejecting opinion evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (physician opinion may be rejected if based on a claimant's subjective complaints which were properly discounted). As discussed *supra*, however, the ALJ's credibility finding is not properly supported. As a result, the first reason for rejecting Dr. Moon's opinion is not supported by substantial evidence.

The second reason given by the ALJ for rejecting Dr. Moon's opinion is that at the time of the evaluation, plaintiff had not had any treatment. (Tr. 20.) While it is true that plaintiff had not commenced treatment at the time of the examination, as discussed *supra*, the ALJ's inference that the record shows improvement with treatment is not well established by substantial evidence. Thus, this is not a specific, legitimate reason for rejecting Dr. Moon's findings.

The third reason for rejecting Dr. Moon's report contains four factors: (1) the opinion is made on check-box form; (2) based on a single exam; (3) predicated on self-report; and (4) in a secondary gain context. (Tr. 20.) Three of these four factors are improperly considered or not supported by substantial evidence. First, the fact that the opinion was based on a single exam is not a legitimate reason for rejecting the opinion. By definition, an examining physician or psychologist sees a patient one time, yet ALJs are directed to consider the opinions of examining sources. 20 C.F.R. §§ 404.1527(d). As a result, it is not appropriate to disregard a source because the findings are based on one exam. Second, because the credibility finding is not properly supported, Dr. Moon's findings based on plaintiff's self-report are not necessarily unreliable. Third, the fact that plaintiff had a motive for gain during the exam is not a valid consideration. The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Lastly, while it is true that individual medical opinions are preferred over check-box reports, s*ee Crane v. Shalala*, 76 F.3d

---

[3] For the social factor of the "ability to care for self," Dr. Moon checked the boxes for both mild and moderate limitations with an arrow between them, indicating the assessed limitation is mild to moderate.

251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983), Dr. Moon filled much of the form with notes and comments from the examination. (Tr. 217-20.) Further, Dr. Moon attached four pages of additional interview notes. (Tr. 221-25.) While a narrative opinion may perhaps be more helpful, Dr. Moon did not simply check-off boxes without any explanation. In this instance, the fact that the psychologist's opinion is conveyed on a form is not an adequate basis for rejecting the entire opinion.

The reasons cited by the ALJ in rejecting Dr. Moon's opinion are not proper reasons or are not adequately supported by substantial evidence. As a result, the ALJ failed to specific, legitimate reasons supported by substantial evidence to justify rejecting Dr. Moon's opinion.

### b. Carole Siefken, ARNP

Ms. Siefken, an "other source" under the regulations, examined plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form on June 6, 20110. (Tr. 289-94.) Ms. Siefken noted diagnoses of post-traumatic stress disorder and major depressive disorder, single episode, NOS and assessed a GAF of 47. (Tr. 291.) Ms. Siefken assessed severe limitations, defined as the "inability to perform one or more basic work-related activities" for two cognitive factors and four social factors. (Tr. 292.)

The ALJ rejected Ms. Siefkin's findings for three reasons. First, the ALJ found the opinion was based on plaintiff's questionable subjective complaints. (Tr. 20.) As discussed above, this is not a clear and convincing reason in this case. The second reason mentioned by the ALJ is that there is no evidence Ms. Siefkin performed an objective mental status exam. A medical opinion may be rejected if it is unsupported by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Ms. Siefken's opinion contains very few notes and the ALJ reasonably noted there are no findings related to a mental status exam or any other objective examination of plaintiff's mental health. As a result, this is a germane reason for rejecting the opinion which is supported by the evidence.

The final reason mentioned by the ALJ in rejecting Ms. Siefken's assessment is the same four-factor reason cited for rejecting Dr. Moon's opinion: contains four factors: (1) the opinion is made on check-box form; (2) based on a single exam; (3) predicated on self-report; and (4) in a secondary gain context. (Tr. 20.) For the same reasons noted *supra*, these reasons are not sufficient to reject the opinion. Notwithstanding, the ALJ did cite a germane reason for rejecting Ms. Siefken's conclusions; therefore, the ALJ did not err.

### c. Dr. Saleh

Dr. Saleh examined plaintiff and completed a Mental Residual Functional Capacity Assessment form on January 20, 2011. (Tr. 324-26.) Dr. Saleh assessed eight severe limitations and three marked limitations. (Tr. 324-26.) Dr. Saleh's only narrative comment is, "Patient continues to have PTSD symptoms, panic symptoms, depression symptoms and they cause moderate-severe impairment to functioning. (Tr. 326.) The ALJ rejected Dr. Saleh's conclusions because, "Dr. Saleh provides only check-the-box limitations without any clinical evidence to support his opinion or explanation of the basis upon which he relied in forming his opinion." (Tr. 20.) As noted *supra*, a check-box form which does not contain adequate explanation for the findings may be rejected. *See Murray*, 722 F.2d at 501. Further, an ALJ need not accept a physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The assessment form completed by Dr. Saleh contains no explanation for the findings. (Tr. 324-26.) The record includes one progress note signed by Dr. Saleh on the same date which is not mentioned by the ALJ. (Tr. 348.) The progress note lists plaintiff's complaints and diagnoses of posttraumatic stress disorder, chronic; major depressive disorder; and panic disorder with agoraphobia. (Tr. 348.) Dr. Saleh also noted, "The patient continues to have some anxiety symptoms and some depressive symptoms, but mostly secondary to her anxiety symptoms." (Tr. 348.) However, this record does not provide clinical or objective findings mentioned by the ALJ, either. As a result, substantial evidence supports the ALJ's conclusion that Dr. Saleh's findings are not well-supported. Thus, the ALJ did not err in rejecting Dr. Saleh's findings.

### d. Psychological Expert

Plaintiff argues the ALJ improperly relied on the nonexamining medical advisors in rejecting the treating and examining providers. (ECF No. 17 at 17-23.) As discussed *supra*, the ALJ gave reasons for rejecting each psychological opinion independent of the opinions of Dr. Gardner and Dr. Moore. Further, as defendant points out, an ALJ may rely upon the opinion of a non-examining medical advisor as long as other evidence in the record supports those findings. *Tonapetyan*, 242 F.3d at 1149; *Magallenes*, 881 F.2d at 752. Thus, the ALJ did not erroneously consider the opinions of Dr. Gardner and Dr. Moore, provided other evidence supports their

findings. However, once the ALJ rejected all of the examining psychological opinion evidence and plaintiff's testimony and statements, there is very little other evidence cited by the ALJ which supports the conclusions of Dr. Gardner and Dr. Moore.

3.  **Lay Witness Statements**

Plaintiff argues the ALJ improperly rejected the statements of plaintiff's father, Steven Dauenhauer, plaintiff's mother, Sylvia Dement, and friend, Jessica Hamper. (ECF No. 17 at 23.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). As noted by the ALJ, the statements are consistent with plaintiff's reported symptoms, including mentions of unpredictable panic attacks, difficulties being around others, and nightmares. (Tr. 20, 195-202, 212-13.) The ALJ concluded "the lack of supporting clinical evidence renders their lay witness statements less persuasive." (Tr. 20-21.) It is appropriate to discount lay testimony if it conflicts with medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, in this case the witness statements are not inconsistent with the medical evidence; rather, there is a lack of clinical evidence to compare to the witness statements. The court concludes the lack of objective evidence is not necessarily a reflection on the veracity of the lay witness statements but is a weakness of the psychological evidence in this case. As a result, the lay witness statements must be reconsidered on remand.

4.  **Step Two**

Plaintiff argues the ALJ erred by relying on the medical expert in finding PTSD and OCD are not severe impairments at step two. (TECF No. 17 at 14.) At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will

not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

  The Commissioner has passed regulations which state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28. The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

  The ALJ found plaintiff does not have a severe impairment due to obsessive-compulsive disorder (OCD) based on Dr. Moore's testimony that apart from brief mention of rituals, there is little in the record to support the diagnosis. (Tr. 15, 42-43, 245, 316.) The ALJ found posttraumatic stress disorder (PTSD) is not a severe impairment because Dr. Moore testified the record reveals some symptoms, but plaintiff's self-report varied in detail. (Tr. 16, 43.) Defendant points out there is no evidence of additional functional limitations resulting from OCD or PTSD. (ECF No. 18 at 6-7.) Plaintiff takes exception and points to instances in the record purportedly identifying limitations at least in part potentially resulting from OCD or PTSD. (ECF No. 21 at 2-3.) However, plaintiff identifies no additional or distinct limitations attributable to OCD or PTSD which were not already considered by the ALJ in conjunction with the severe impairments of anxiety and personality disorder. Plaintiff cites Ms. Siefken's diagnoses and assessment of limitations, Dr. Saleh's opinion, and the opinions of the state reviewing psychologists Drs. Gardner and Underwood. (ECF No. 21 at 2-3.) Even if the ALJ erred by not identifying PTSD or OCD as a severe impairment, the limitations attributable to those diagnoses were considered by the ALJ. Thus, any error at step two would be harmless error. Notwithstanding, due to the errors

elsewhere in the decision, on remand, the ALJ should revisit the step two determination and ensure the findings as to PTSD and OCD are adequately supported.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should obtain a psychological evaluation including objective testing and consider any other appropriate evidence. The ALJ should also reconsider the credibility finding, the psychological opinion evidence and the lay witness statements.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 18)** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED January 29, 2013

        S/ JAMES P. HUTTON
    UNITED STATES MAGISTRATE JUDGE